48 F.2d 333 (1930)
THE CITY OF ROME.
In re OCEAN S. S. CO. OF SAVANNAH.
District Court, S. D. New York.
November 28, 1930.
*334 *335 *336 *337 *338 *339 *340 *341 *342 *343 Kirlin, Campbell, Hickox, Keating & McGrann, of New York City, for petitioner Ocean S. S. Co. of Savannah.
Bigham, Englar, Jones & Houston, of New York City, for claimants Dobson, Egber and Haselden.
Lucien V. Axtell, of New York City, for claimant Charles T. Mims.
Robert E. Manley, of New York City (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City), for the United States.
William A. Ryan, of Brooklyn, N. Y., for claimant Berk and others.
Barry, Wainwright, Thacher & Symmers, of New York City, for other petitioners.
CAFFEY, District Judge.
I have examined the authorities cited, and have considered the arguments I agree with the conclusions of the commissioner, and feel that the grounds assigned in the report adequately sustain him. In consequence, there is no need for extended discussion. Accordingly, I shall content myself with adding only a few brief comments.
1. While the question raised with respect to the remarriage of widows seems not heretofore to have been squarely passed on by a federal court, the doctrine prevailing in the state courts (report, ante, pp. 336-343) impresses me as right, as certainly it is far preferable in application to the consequences which would ensue from adopting a different doctrine, and I think its acceptance is plainly required if harmony is to be preserved with a closely related proposition which has been settled by the Supreme Court of the United States.
The best basis I have seen in the state decisions for refusing to mitigate damages of a widow because of remarriage is stated in Georgia Railroad & Banking Company v. Garr, 57 Ga. 277, 280, 24 Am. Rep. 492, and St. Louis, I. M. & S. Ry. Co. v. Cleere, 76 Ark. 377, 386, 88 S. W. 995. If we should enter upon an inquiry as to the relative merits of the new husband as a provider, coupled with his age, employment, condition of health, and other incidental elements concerning him, unavoidably we should embark upon a realm of speculation and be led into a sea of impossible calculations. Moreover, adherence to the rule followed by the commissioner seems essential to consistency with the holding that, upon the death of the first husband, there was "an immediate, final and absolute vesting" in his widow, if the statutory beneficiary, of a cause of action on that account. C., B. & Q. R. R. v. Wells-Dickey Trust Co., 275 U. S. 161, 163, 164, 48 S. Ct. 73, 72 L. Ed. 216, 59 A. L. R. 758.
2. Payment of death claims in full does not rest for support exclusively on The Steel Inventor (D. C.) 36 F.(2d) 399, as seems to have been assumed by some counsel. On the contrary, under decisions of the Supreme Court of the United States itself, I see no escape, on the facts of the case at bar, from priority to the death claimants.
It was unequivocally determined in United States v. The Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313, that, by coming into this proceeding to litigate its claim, the United *344 States put itself upon the plane of, and subjected itself to the law measuring the rights of, the private owner of a vessel engaged in collision. It is also established by The Hamilton, 207 U. S. 398, 406, 407, 28 S. Ct. 133, 52 L. Ed. 264, that, as between the private owner who seeks damages for his lost ship and the successors in interest to those aboard that ship who perished by her sinking, the death claimants must be paid first. By coupling the two cases mentioned, The Steel Inventor is completely sustained.
It is urged that the death claimants cannot recover in direct suits against the government, Dobson v. United States (C. C. A.) 27 F.(2d) 807  in part because members of the naval service are provided for by a pension system. This, however, seems to me to be entirely beside the point. One reason why nonliability of the sovereign is immaterial is that, inasmuch as the limitation fund arises wholly from a nongovernment vessel, the cause of action of the death claimants is predicated solely upon the fault of the ship that survived the collision, and may be maintained regardless of whether the other ship was at fault, Erie R. R. Co. v. Erie Transportation Co., 204 U. S. 220, 225, 226, 27 S. Ct. 246, 51 L. Ed. 450. In consequence, the relation to the United States, called by counsel the employment status, of those who lost their lives in the S-51, is irrelevant to the inquiry on which we are engaged. As said, in regard to this very matter, in The Hamilton, at page 406 of 207 U. S., 28 S. Ct. 133, 135, the contract between the seaman who was drowned on and the owner of the sunken ship "does not affect the case." If the death claimants were subordinated to, or even placed on an equality with the government, in its capacity as a shipowner who has intervened to prosecute its claim against the limitation fund, I think clearly they would be deprived of a right to which, as between themselves and the City of Rome, they are entitled.
3. So far as I can discover, no award was made by the commissioner to a child for a period beyond infancy. However, if the total going to a widow and her child be not excessive, then it seems to me that the apportionment, even though it were somewhat liberal to the child, might well be treated, on complaint of the only objectors here involved, as damnum absque injuria. After review of the gross going to a mother and her child or children in the cases of numerous claimants, I find none in which it was greater than it should be.
4. The mother of fireman Mims is the only claimant who contends that an allowance is inadequate. When, however, all the facts are taken into account  including the hazardous nature of the occupation, the probability that a man of 21 will marry, the other reasonable probabilities with respect to the future course of a youth of the kind involved, the monthly contribution (as the proof shows) being about $15 and the age of the beneficiary being 36  I think that, when the table of mortality and the table of present value of a dollar are applied, the fixing of the damages at $2,800 is as nearly fair an approximation of the pecuniary loss as can be arrived at. At any rate, the commissioner was justified in reaching that figure, and there is no warrant for overruling him. Only indulgence in rank speculation would permit any substantial increase.
4. So far as concerns the amounts of particular recoveries by death claimants sought to be reduced, some exceptions might be disregarded because so general and because attention has not been drawn to portions of the record relied on. Nevertheless, I have gone over the proof bearing on many typical exceptions of all kinds and tested the calculations.
Undoubtedly the task of the commissioner was difficult. He has performed it with care. So far as I can see, he has given weight to nothing which was unfair and has not omitted to give weight to anything which was pertinent. Not alone was there some evidence to support him in every instance, but I have found no instance in which he appears to have committed an error.
6. Several principles of law insisted on by exceptants are indisputably sound. Nevertheless, they avail nothing, because there is no demonstrated illustration of failure by the commissioner to employ them.
The commissioner will be allowed $6,000 for his services.
Exceptions overruled, and report confirmed.