**Petition of UNITED STATES et al.**

United States District Court
S. D. New York.
June 5, 1950.

496

Irving H. Saypol, United States Attorney, New York City, for petitioners, Howard F. Fanning, Assistant to United States Attorney, New York City, of counsel.

Paul C. Matthews, New York City, for claimants Flavio DeQueiroz, Estates of Harold Olson, Albinus Karlsson, Wallis Roos, Karl Thunberg, Sven Landstroem, Elas Munga, Leif C. Staermose, Joseph Kalinowski, Jr., Archibald F. McGrath, New York City, of counsel.

Silas B. Axtell, New York City, for claimants Florentino Oliveira, Philip T. Wold, William James Finch, Edward Wilson, and Pierre Pino.

Harold Davis, New York City, for claimant Gussie Dictor.

GODDARD, District Judge.

It is apparent from the Commissioner's report that he has carefully considered the facts, the law, and his award in connection with each individual claim. His find-ings of fact and conclusions of law are all supported by the evidence except, it seems to me, in the instances hereinafter stated.

Edward M. Wilson's wages on the Friar Rock as a radio operator were $90 a month plus $100 bonus and "found". The Commissioner holds that ·he would have continued as a radio operator until January 1, 1946. In calculating Wilson's loss of earnings from the date of his injury to January 1, 1946, the Commissioner allowed him $90 a month plus 100% bonus plus $100 a month for "found" or $3,360 a year. This allows him a total loss for that period of $13,440 which I think is reasonable and fair.

From January 1, 1946 to June 25, 1947 [the date of Wilson's testimony] the Commissioner allowed him $300 a month [$3,-600 a year] which is the average income he earned as a butter maker for three years before he left to enter the maritime service. However, as it is probable that he would have returned to his position as a foreman in the butter business had it not been for ·his injury, and in view of the standard of wages that continued through the period immediately following the war, I think he should be allowed for this period the same rate of wages, namely $5,000 a year, which he was receiving in 1940 when he left business to join the maritime service. Wilson's past loss of earnings for the period January 1, 1946 to June 25, 1947 would then amount to approximately $7,500. The total amount he would have earned had he not been injured up to June 25, 1947 is $20,940 [$13,-440 plus $7,500]. Deducting the wages actually earned by him from the date of his injury to the date of his testimony [$8,910], Wilson's past loss of earnings is $12,030.

In computing his future loss of earnings, the Commissioner averaged Wilson's earnings for the three years he was a butter maker. However, during the first year he was learning the butter making business. At the end of that year he had acquired the necessary experience and was promoted to foreman. His average earnings for the two years as foreman was $4,250. I think this amount should be ac-

cepted as his probable future income had he not been injured. Deducting his last known salary after his return to work [$2,460], his loss in future earnings is approximately $1,800 a year. This, capitalized at 3% for 33 years [his life expectancy], makes the present value of his reduction of future earnings approximately $37,500. To this $37,500 should be added his past loss of $12,030 and general damages of $30,000. This makes a total award of $79,530 to which I think he is entitled.

■ Albinus Karlsson, a Swedish National, was 47 years of age and unmarried at the time of his death. His parents were living on a government pension in the home of another unmarried son. Karlsson had not seen them in thirty-two years. The most that he ever sent them was a gift of $10 at Christmas. When the beneficiaries are the parent of an adult child, pecuniary loss must be alleged and proved. Garrett v. Louisville & N. R. R. Co., 235 U.S. 308, 35 S.Ct. 32, 59 L.Ed. 242; The Cleveco, 6 Cir., 169 F.2d 622. There is no evidence that the parents have suffered or will suffer any pecuniary loss as a result of his death, and I think the only award that the evidence permits is the award for the pain and suffering which he sustained before his death. For this the Commissioner has allowed $7,000.

■ Sven Verner Landstroem was survived by a sister who was not dependent upon him. Since no beneficiary of any of the classes named in the Federal Employers' Liability Act, 45 U.S.C.A. § 59, survived the decedent, there was no survival of decedent's cause of action for pain and suffering. St. Louis & San Francisco R. R. v. Oldham, 188 Okl. 245, 107 P.2d 1017; Bailey v. Baltimore Mail S. S. Co., D.C. 1941, 43 F.Supp. 243. The claim for pain and suffering of Landstroem is therefore disallowed.

The Commissioner found that Abraham Miller was contributing an average of $20 a month to the support of his mother before his death. She survived her son by eight months and her estate has been allowed a recovery of $160 for this period. This award is not questioned.

■ However the award of $1,680 to Gussie Dictor, a half-sister of the deceased, is objected to by the Government, and I think the objection is well taken. Since the mother of the decedent was alive at the time of his death, no award can be made to the decedent's half-sister based upon the Jones Act, 46 U.S.C.A. § 688. Chicago Burlington & Quincy R. R. Co. v. Wells-Dickey Trust Co., Administrator, 1927, 275 U.S. 161, 48 S.Ct. 73, 72 L.Ed. 216, 59 A. L.R. 758. The Death on The High Seas Act, 46 U.S.C.A. § 761, provides that the personal representative of the decedent may maintain a suit for damages for the exclusive benefit of a decedent's dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued. Recovery has been allowed to a sister of a decedent when a parent was alive at the time of the decedent's death on the basis of this statute. The Four Sisters, D.C., 75 F.Supp. 399, 1947 A.M.C. 1623. Even if the claim filed by claimant on February 29, 1944 be treated as entitling her to a remedy under the Death on The High Seas Act and the decision in Four Sisters case be followed, the claim will have to be disallowed.

■ Section 763 of this Act requires that suit be begun within two years from the date of the wrongful act unless during that period there has not been reasonable opportunity for securing jurisdiction. In that event an additional period of ninety days is allowed for the purpose of securing jurisdiction. The United States and the Waterman Steamship Agency were subject to the jurisdiction of this court during the entire two years following the alleged wrongful act in this case. In fact, they both voluntarily submitted to the jurisdiction of this court when they filed the petition to limit their liability on September 30, 1943. Since Gussie Dictor's claim was not filed until February 28, 1944, which is more than two years after the date [January 14, 1942] of the alleged wrongful act, the cause of action was extinguished. In re

Agwi Navigation Co., 2 Cir., 89 F.2d 11; Engel v. Davenport, 271 U.S. 33, 39, 46 S. Ct. 410, 70 L.Ed. 813; Flynn, Executor, v. New York, N. H. & Hartford Railroad Co., 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837, 72 A.L.R. 1311.

■ It is urged that, since the date originally set in the monition issued by this court as the last day upon which claims could be filed in this limitation proceeding was extended to March 1, 1944 and Gussie Dictor's claim was filed before that day, her claim was not barred by the statute. However, the statutory limitation period is not merely a limitation of the remedy, but is a condition on the right itself. The pendency of a limitation proceeding does not stop the running of the statutory time, expiration of which, without the bringing of suit or the filing of a claim in the limitation proceeding, would extinguish the claim. In re Agwi Navigation Co., supra.

The fact that the time for filing claims in this proceeding had been extended did not and could not operate as an extension of the two year limitation of liability imposed by the statute. It merely set a date before which all claims had to be filed even though the statutory period would not have run on this claim by that date. It thus affected only those claims that could have been filed after March 1, 1944 had the monition not been issued. It had no other effect upon the validity of any claim.

Petitioners except to the award to Thorkild Sorenson as a result of the death of Leif Staermose based on an expectancy of 35 years and to the Commissioner's refusal to give any effect to the fact that she remarried on April 2, 1947.

■ The Commissioner reports that he reached the conclusion "that no authority has yet definitely established the broad principle that remarriage of a widow affects her claim for pecuniary loss by reason of wrongful death". I have been unable to find a Supreme Court or Circuit Court decision on the question. However, in The City of Rome, D.C., 48 F.2d 333, the late Honorable Van Vechten Veeder, serving as Commissioner to report on damages, held that remarriage of a widow neither bars nor mitigates her pecuniary loss arising out of the death of her husband. The Commissioner's report was confirmed in an opinion by Judge Caffey. I think that the decision in The City of Rome is right and I shall follow it and overrule the government's objection to the award to Thorkild Sorenson as a result of the death of Leif Staermose.

It is urged that the Commissioner failed to take into consideration the increase in wage scales that took place after the date of the sinking of the Friar Rock. Although there was no evidence introduced at the hearing before the Commissioner on this subject, the Commissioner did make allowance for such an increase. As well as expressly taking this into consideration, he used a method of computation which had the effect of thus increasing the wages. He computed the annual wages as if the claimants would have been employed every day of the year, whereas in actuality there would have been periods of inactivity. In computing past loss of earnings he added the 100% bonus to the base pay for the full year when the bonus was allowed only while the vessel was at sea. Moreover, the Commissioner, in computing the probable incomes, made no deductions for the taxes to which their earnings would have been subject had the recipients lived and continued their normal lives.

The "general damages" awarded by the Commissioner I take to include pain, suffering, humiliation, permanent disfigurement, inconvenience and physical incapacity in daily living and the mental and physical results of the injury. Armentrout v. Virginia Ry. Co., D.C., 72 F.Supp. 997, 1003, reversed on other grounds in 4 Cir., 1948, 166 F.2d 400, 4 A.L.R.2d 1064.

The Commissioner's report is modified as above, and so modified, is confirmed.

The Commissioner requests a fee of $3,500 for his services which is fair and reasonable for the work he has done. His fee is fixed at that amount.

Settle order on notice.