## SAINT LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY

## COMPANY *v.* CLEERE.

### Opinion delivered July 22, 1905.

1. MARRIED WOMAN—AUTHORITY TO ACT AS ADMINISTRATRIX.—Under the laws of New York a married woman is capable of acting as administratrix, and under Kirby's Digest, § 6003, a foreign administratrix may sue in this State   (Page 380.)

2. RAILROAD—NEGLIGENCE—INSTRUCTION.—The court instructed the jury, in a suit against a railroad company for negligent killing of a person on its track, that if the defendant backed one of its engines over the track between its coaches and the platform without guard or lookout, and without such signal or warning as would reasonably attract the attention of a man of ordinary care and prudence who was rightfully engaged in passing between the coaches and platform, the railroad company was guilty of negligence. *Held,* that the instruction, taken with other instructions given, did not exact too great a degree of care. *Held,* also, that, construing all the instructions together, this instruction did not assume that deceased was rightfully upon the track. (Page 381.)

3. SAME—NEGLIGENCE—PARTIAL OBSTRUCTION OF VISION AND HEARING.— The court properly charged that the fact alone, if proved, that deceased pulled his cape over his head in such manner as only partially to obstruct his ability to see or hear an approaching train, and in that condition stepped in front of an approaching engine, did not necessarily render him guilty of contributory negligence, the question being whether he exercised ordinary care under the circumstances. (Page 383.)

4. SAME—REMARRIAGE OF WIDOW IN REDUCTION OF DAMAGES.—In an action by an administratrix on behalf of the widow and next of kin of one alleged to have been killed by defendant's negligence it was not admissible for defendant to show, in reduction of the widow's damages, that she had remarried since the killing.   (Page 386.)

5. APPEAL—EFFECT OF FINDING AS TO SUFFICIENCY OF EVIDENCE.—Where on former appeal the evidence was found sufficient to support the verdict, but the cause was reversed because of erroneous instructions, the finding as to the sufficiency of the evidence is not conclusive on a new trial.   (Page 387.)

6. CARRIERS—PERSON ASSISTING PASSENGER.—One who passes over railway tracks betwen the platform of the station and a coach which is open to receive passengers, being engaged in looking after an embarking passenger, has a right to rely upon an implied assurance that the way is clear.   (Page 387.)

7. SAME—INSTRUCTION AS TO NECESSITY OF LIGHTS.—An instruction which withdrew from the jury's consideration the question whether there

should have been lights upon the moving engine and tender was properly refused if there was evidence tending to show that it was dark enough to require lights.   (Page 387.)

8.   DEATH—EXCESSIVE DAMAGES.—Where the evidence tended to establish that deceased had an expectancy of life of 35 years, and was contributing to his family more than $1,250 per annum, and that his infant child suffered the loss of the parent's physical and moral training, a verdict of $20,000 in favor of the widow and next of kin was not excessive. (Page 388.)

9.   SAME—INTEREST.—In action for a negligent killing, plaintiff is entitled to interest at the rate of 6 per cent. per annum on the amount of damages from the date of deceased's death to the date of recovery. (Page 388.)

Appeal from Hot Springs Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Affirmed.

## STATEMENT BY THE COURT.

This action was brought by the widow and administratrix of the estate of Arthur Tomlinson, deceased, against the St. Louis, Iron Mountain & Southern Railway Company, to recover damages for his death.   The case has been here on a former appeal, and the facts are fully stated in the former opinion.   *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson,* 69 Ark. 489.

After the case was remanded, a change of venue was taken to Hot Springs County, where a trial was had which resulted in a verdict and judgment in favor of the plaintiff for $20,000 damages.

Before the trial the defendant filed a plea in abatement, as an amendment to its answer, setting forth the intermarriage of the plaintiff with one Martin J. Cleere since the commencement of the action.   The plaintiff responded, admitting such intermarriage, and asked that the cause proceed in her name, Regina Tomlinson Cleere as administratrix, and that her husband be joined with her in the suit.   She asked that she, in her own interest as widow, and Arthur T. Tomlinson, the infant son and only heir at law of said decedent as the next of kin, be also made parties plaintiff.   These requests of the plaintiff were granted by the court, and the cause proceeded accordingly.   The final judgment of the court awarding damages was rendered only in favor of the administratrix.

*B. S. Johnson*, for appellant.

The plea in abatement should have been sustained. 69 Ark. 489; Sand. & H. Dig. § 5912; 32 Ark. 91; 35 Ark. 511. The verdict should have been for appellant. 69 Ark. 498; 62 Ark. 245; 95 U. S. 697; 49 Ark. 134; 61 Ark. 549; 130 Fed. 72; 16 S. W. 909; 55 Ark. 459; Patt. Ry. Law, § 177; 54 Ark. 431; 73 Ind. 163; 62 N. E. 455; 23 Oh. Cir. Ct. 130; 201 Pa. 124; 96 Me. 207; 64 N. E. 130; 121 Fed. 678. Under the facts in the case, appellant was not liable. 154 Mass. 403; 155 Mass. 44; 165 Mass. 264; 156 Mass. 180; 158 Mass. 10; 4 L. R. A. 632; 74 Fed. 299; 44 S. W. 703; 57 Fed. 926; 73 Fed. 627; 61 Ark. 555; 150 U. S. 248; 12 Am. & Eng. R. Cas. 460. The first instruction given was abstract and misleading. 16 Ala. 53; 5 Ark. 651; 18 Ark. 527; 15 Ark. 492; 37 Ark. 593; 51 Ark. 88; 55 Ark. 259; 68 Ark. 106; 65 Ark. 98; 37 Ark. 333; 30 Ark. 383. The third instruction was error. 14 Ark. 295, 537, 543; 34 Ark. 702; 45 Ark. 263; 37 Ark. 333; 30 Ark. 383; 57 Ark. 512; 62 Ark. 286. The sixth instruction undertakes to pass upon a question of fact. 37 Ark. 581; 37 Ark. 239; 49 Ark. 439; Const. Ark., art 7, § 23; 49 Ark. 148; 34 Ark. 696; 45 Ark. 166, 492; 123 Fed. 52. The instruction upon the re-marriage of plaintiff was error. 13 App. Cas. 800; 4 Best & S. 403; 44 L. J. Exch. 39; 15 Ont. App. 477. Where a disputed fact is shown not to exist by undisputed evidence, that fact should be taken from the jury. 51 Ark. 140; 57 Ark. 461; 52 Ark. 406. The tenth instruction requested by appellant should have been given. 54 Ark. 431; 64 Ark. 365; 62 Ark. 156, 263; 61 Ark. 549; 95 U. S. 161; 114 U. S. 615. Instructions Nos. 11, 12 and 14, requested by defendant, should have been given. 56 Ark. 460; 143 Ind. 405; 3 Elliott, Railroads, 1771, 1167; 41 N. Y. 296; 128 Ind. 143; 25 Mich. 274; 105 Mass. 77, 203; 39 N. Y. 358; 160 Pa. St. 117; 56 Minn. 274; 26 Ark. 17; 5 Ark. 558; 7 Ark. 542; 10 Ark. 186. The verdict is excessive. 57 Ark. 384; 12 S. E. 512; 18 W. Va. 1; 11 Wis. 415; 43 Kas. 309; 37 Kas. 567; 38 N. Y. 178; 68 Tex. 617; 7 S. W. 492; 5 Minn. 376; 17 Grant. 366; 12 Pick. 191; 40 Cal. 73; 13 Texas, 594; 66 Ill. 71; 49 S. W. 868; 38 Ib. 401; 46 Mo. App. 638; 70 Ga. 120; 91 Ga. 820; 49 Kas. 78; 37 Kas. 578; 44 Kan. 410; 49 Pac. 436; 46 Mo. 310; 75 N. W. 272; 39 Ark. 511.

*Ashley Cockrill* and *Murphy & Mehaffy,* for appellee.

The questions settled by the former appeal cannot be considered in this one.  55 Ark. 614; 56 Ark. 170; 3 Cyc. 396; 36 N. Y. 339. The motion to abate the suit was properly overruled, 7 La. 595; 59 Ind. 344; 43 Mass. 31; 44 Ark. 202; 49 Ark. 277; 63 Ark. 510; 70 Ark. 74; 11 Am. & Eng. Enc. Law, 681, 814; 1 Wm. Exrs. 233; 41 S. C. 374; 3 Bush, 505; 16 Kas. 568; 1 Disn. 592; Cros. Ex. & Admr. 102; Sand. & H. Dig. § 37; 32 Ark. 332; 1 Redf. 217; 89 N. Y. 401; 2 N. Y. S. 634; 84 N. Y. 48.  The husband, widow and son were properly joined as parties. 54 Ark. 528; 30 Ark.401; 35 Ark. 303; 10 Enc. Pl. & Pr. 222; 70 Tex.582; Kirby's Dig. § 5999; 68 Ark. 555; 43 Ark. 41; 44 Pa. St. 179; 112 Pa. St. 511; 71 Ark. 258; 77 S. W. 890; Kirby's Dig. § 6002; 93 Fed. 260; 52 Fed. 371; 68 Tex. 664; 76 S. W. 589; 28 Ohio St. 191; 36 L. R. A. 812.  The court's instruction upon the remarriage of the widow was proper.  45 Oh. St. 470; Suth. Dam. § 158; 70 Tex. 582; 57 Ga. 277; 34 Atl. 856; 27 W. Va. 32; 91 N. W. 358; 66 N. E. 696; 69 N. E. 620.  The instructions as to the hood worn by deceased were correct. 74 Ill. App. 387; 36 S. W. 319; 79 Wis. 404; 115 Mass. 190.  Instructions Nos. 11 and 12 requested by defendant were properly refused.     56 Ark. 457; 64 Ark. 332; 54 Ark. 159; 48 Ark. 366; 12 Am. & Eng. R. Cas. 418.  The verdict was not excessive.  15 Ark. 345; 21 So. 507; Sand. & H. Dig. § 912; Suth. Dam. § 455; 52 Fed. 371, 724, 87; 64 Tex. 485; 75 Tex. 157; 60 Ark. 550; 34 S. W. 229; 27 W. Va. 32; 42 Pac. 822; 66 Me. 572; 29 N. Y. 286; 2 Biss. 282; 58 Ark. 454; 60 Ark. 560; 50 Pac. 508; 44 N. Y. Sup. 820; 52 Fed. 714, 87; 34 S. W. 133; 75 Tex. 61; 178 N. Y. 623; 87 N. Y. S. 617; 80 S. W. 852; 176 N. Y. 607; 174 N. Y. 512; 176 N. Y. 607; 65 S. W. 217.

McCulloch, J., (after stating the facts.)  1. The initial question presented for our consideration is, should the action have been abated on account of the remarriage of the administratrix?  In passing upon that point we waive the question whether, conceding that the remarriage of the administratrix *ipso facto* revoked her letters and left no administration pending, the widow and heir at law could properly be made parties plaintiff, and the cause be allowed to proceed in their names.  This was done, and the cause proceeded in their names as well as in the

name of the administratrix, though the final judgment was rendered in favor of the administratrix.

The statute provides that "every such action shall be brought by and in the name of the personal representative of such deceased person; and if there be no personal representative, then the same may be brought by the heirs at law of such deceased person." Kirby's Digest, § 6290.

But we uphold the ruling of the court upon a different ground from that of the right of the widow and heir to be substituted as parties plaintiff. The plaintiff derived her powers from letters of administration issued to her from the proper court exercising probate jurisdiction in the State of New York, where the decedent lived and claimed his citizenship at the time of his death, and where the plaintiff also resided. A foreign executor or administrator is permitted by the statutes of this State to sue here. Kirby's Dig. § 6003. Under the laws of that State, which must control us in determining the question, and of which we take judicial knowledge (Act April 11, 1901, Kirby's Digest, § 7823), married women are legally capable of acting as administratrices, and, that being true, it necessarily follows that the marriage of an administratrix did not revoke her letters. The course of legislation in that State on the subject is reviewed in the case of Re *Benj. Curser Estate,* 89 N. Y. 401. See also *Hamilton* v. *Levy,* 41 S. C. 374; *Moss* v. *Rowland,* 3 Bush, 505; *Kansas Pacific Railway Co.* v. *Cutter,* 16 Kan. 568.

No error was committed in refusing to sustain the plea in abatement.

2. Numerous errors are assigned in the giving of instructions asked by plaintiff, and in refusing to give certain instructions, and modifying others asked by the defendant.

Nine separate instructions were given at the request of the plaintiff, and fifteen at the request of the defendant, some of which were modified. All of them need not be copied here, but only such as we deem it important to discuss.

Instruction number three given at plaintiff's request is as follows:

"3. If you find from a preponderance of the evidence that the defendant railway backed one of its engines over a track between the coaches and the platform, without a guard or look-

out, or, not having such a guard or lookout, without signal or warning which, under the circumstances, would reasonably attract the attention of a man of ordinary care and prudence who was rightfully engaged in passing between the coaches and the station platform, the railway was guilty of negligence, and you should so find."

Error is alleged in that the word "guard" is used in the instruction, though the statute only requires a lookout to be kept; and that the instruction assumes the existence of the fact that plaintiff's intestate was rightfully upon the track.

We do not think that the instruction is open to either of the objections named. The court was there telling the jury what would constitute negligence on the part of the railway company. It is true that the statute only requires that a lookout be kept, but the court in effect said that if *either* a guard or lookout was kept, or if, in the absence of such guard or lookout, such signals or warnings were given as would, under the circumstances, reasonably attract the attention of a man of ordinary care and prudence rightfully engaged in passing between the coaches and station, then the company was guilty of no negligence. An instruction on that subject which omitted the word "guard" would have been erroneous and prejudicial to appellant's interest, as there was some testimony tending to show that a guard was maintained near by who warned persons about the tracks, and, in the face of that testimony, it would have been improper to instruct the jury that the failure to keep a lookout was negligence. On the other hand, if the servants of the company kept neither a guard nor lookout, nor gave signals or warnings such as would reasonably attract the attention of a man of ordinary care and prudence rightfully engaged in passing between the station and the coaches then open for the reception of passengers, then they were guilty of negligence, and the jury were properly so instructed.

This instruction must, of course, be considered in connection with the others, and particularly the following, given at the instance of the defendant:

"17. The court instructs the jury that defendant's only duty in running said engine was to use ordinary care, with reference to speed of same, to keep a lookout while passing through the station,

and to give signals by ringing the bell; and if the proof shows that these things were done, then there was no negligence, and your verdict should be for defendant."

The two, when read together, constitute a correct and complete exposition of the law on the question of negligence, as applicable to the facts of this case, and were quite as favorable to appellant as the facts warranted.

No higher degree of care was exacted of appellant's servants by the instruction complained of than is done by the following language contained in the fourteenth instruction asked by appellant's counsel, viz: "Although it is the duty of the railway company, by lookout, by bell signals, and by such other means as ordinary prudence may dictate, to endeavor to protect him, it has the right to assume that he has knowledge of his surroundings, and knows that the engines and trains may pass, and that he will use ordinary care to protect himself," etc.

Nor does the instruction involve an assumption by the court of the fact that Tomlinson was rightfully upon the track. The question whether he was, at the time he was killed, crossing the tracks upon the invitation of the railway company was the chief point at issue in the case, and the proof and instructions were directed specifically to it. All the instructions must be considered together, and the question was plainly submitted to the jury for determination upon instructions given at the instance of each party, and the jury could not possibly have understood that the existence of that fact was assumed by the court. *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 75 Ark. 325; *Fort* v. *State,* 52 Ark. 180.

The eighth instruction, given at the request of the defendant, is an example of the manner in which the question was submitted:

"One who, after having escorted a passenger to his coach, leaves the coach, and then returns without any necessity therefor, and for his own pleasure merely, is a licensee, and cannot be said to have returned upon an implied invitation of the carrier, and the carrier owes him no duty save to keep a lookout, and not to wantonly injure him."

The next assignment of error is in the giving of instruction number seven, asked by the plaintiff, which is as follows:

"7. You are instructed that the fact alone, if proved, that Tomlinson pulled his cape over his head in such manner as only partially to obstruct his ability to see or hear an approaching train, or both, and in that condition stepped or walked in front of an approaching engine, does not necessarily render him guilty of contributory negligence; the question for you to determine being, then, whether Tomlinson exercised ordinary care and prudence under the circumstances."

The court also gave, in the following modified form, instructions on the subject of contributory negligence, asked by appellant, viz.:

"7. The court charges the jury that if they find from the evidence that Tomlinson, in order to keep the rain off, enveloped his head in the cape or hood of his coat just before he passed upon the track, *so as to obstruct his vision or hearing,* and in this condition stepped, ran or walked upon defendant's track immediately in front of a backing engine, and was immediately struck and killed by it, when he would have seen or heard the engine approaching had his vision or hearing not been obstructed, then he was guilty of contributory negligence, and your verdict should be for the defendant.

"9. If the jury find from the evidence that the deceased attempted to cross over one of defendant's tracks during a heavy rain, with his head and ears so muffled up as to obstruct his hearing or seeing an approaching engine, and, in making such an attempt stepped in front of a moving engine, was struck, and killed, then the court tells you that he was guilty of contributory negligence, and there can be no recovery against the defendant."

And the following in the form asked by appellant, viz.:

"15. If the jury find from the evidence that Tomlinson pulled his cape or hood over his head, covering his eyes and ears so that he could only see directly in front, and in this condition plunged on the track just before the tender of the backing engine, then he was guilty of contributory negligence, and your verdict should be for the defendant."

This court on the former appeal of this case said:

"While it cannot be said as a matter of law that a person crossing a track of a railroad by invitation of the company should under all circumstances look and listen for approaching trains,

neither, on the other hand, can it be said that they should not do so; the question, as before stated, being usually one for the jury to determine. Yet certainly a person in such situation should not lose sight of the fact that he is in a place of danger to a careless person. He should not close his eyes or stop his ears, so that warning of danger would not reach him."

It will be observed that the court did not hold that a partial obstruction to the sight or hearing would necessarily be contributory negligence, but said that, if Tomlinson "pulled his cape over his head, covering his eyes and ears, so that he could see directly in front only, and plunged, in this condition, on the track just before the tender of a backing engine," he was guilty of such negligence as would bar a recovery. In other words, it was held that Tomlinson's failure to look and listen was not necessarily negligence, but that if he obstructed his vision and hearing so as to put it beyond his power to see or hear, he was, as a matter of law, guilty of contributory negligence. It follows from this that if, in crossing the track, he pulled his cape over his head in such manner as only partially to obstruct his vision or hearing, and not to put it beyond his power reasonably to hear the approaching engine, then it cannot be said, as a matter of law, that he was guilty of negligence, but it was a question for the jury to determine whether or not he exercised ordinary care and prudence under the circumstances. To hold that, as a matter of law, he could not with prudence even slightly or partially obstruct his vision or hearing would be to declare that he must have looked or listened—the very thing which the court in the former opinion in this case would not declare, but said that it should be submitted to the jury as a question of fact. The court said:

"If, then, a passenger or his escort is injured while attempting to pass an intervening track to reach a depot or train, when the circumstances justify him in believing that he is invited by the company to pass over the track, it becomes a question for the jury, after considering all the circumstances, to say whether or not he is guilty of ordinary care. In determining that question the jury should no doubt consider whether he did or did not look and listen, along with the other circumstances in proof; but the mere fact, if proved, that he did not look or listen does not,

under such circumstances, conclusively establish negligence, it being for the jury to say whether he should have looked or listened, and whether, under all the circumstances, he was guilty of negligence or not."

We do not think there was any error in giving the instruction complained of, especially in connection with those herein quoted on the same subject. They were entirely harmonious, and in no wise inconsistent with each other, or with the former opinion of the court, which is established as the law of this case.

Appellant also complained on account of the giving of an instruction asked by the plaintiff to the effect that the jury should not consider the remarriage of the widow as affecting the assessment of damages. This was a correct instruction, as it was not proper for the jury to consider the remarriage of the widow to reduce the amount of the damage. The defendant alleged the remarriage in its amended answer, and the fact was brought out in the proof; hence it was not improper for the court to tell the jury that they could not consider it in assessing the damages. In *Railway Co.* v. *Maddry,* 57 Ark. 306, this court said: "The reason is that a right of action arises at the time of the death to recover just what was lost by it; and that the loss thus occasioned is none the less, even though the injured party thereafter acquire, through his own skill or industry, or the charity or affection of another, more than he lost." The precise question was passed upon in *Davis* v. *Guarnieri,* 45 Ohio St. 470, and it was held that damages to the husband for the loss of his wife could not be reduced by proof that he has married a second wife, who performed the services for him formerly performed by his first wife. We cannot agree with learned counsel that "the pecuniary loss of the wife by the death of her husband was, in a manner, recouped by her second marriage, and her loss could and should extend only up to such time as she married the second time, and not up to the probable life of her deceased husband." To so hold could but lead to an inquiry as to the comparative capacity of the two husbands and the amount of their respective contributions to the support of the wife. We find no error in the refusal and modification of certain other instructions asked by the defendant.

The fifth instruction withdrew from the consideration of the jury the question whether there should have been lights upon the moving engine and tender, and was properly refused, as there was some testimony tending to show that it was dark enough to require lights, so as to enable those passing over the tracks to observe the approach of the engine.

The other refused instructions involved a declaration that the failure to "look and listen" on the part of Tomlinson was negligence when the court in the former opinion in this case held that such failure was a question of care and prudence to be submitted to the jury. The instructions were contrary to the law of the case announced in the former opinion, and were properly refused.

3. Counsel for appellant strenuously urge that the testimony was insufficient to support the verdict. We do not agree with the contention of counsel for appellee that the decision of this court on the former appeal, reversing the case for a new trial, is conclusive of the question of the sufficiency of the evidence in support of the verdict of the jury on the retrial. We have recently held to the contrary. *Heard* v. *Ewan,* 73 Ark. 513, 85 S. W. 240. But we think the testimony on the trial anew, as upon the former trial, was sufficient to sustain the verdict. The jury were warranted in finding, and, before returning the verdict under the instructions they received from the court, must have found, that the servants of the railway company backed the engine and tender at a rapid speed between the coaches and depot without keeping an efficient lookout and without giving warning of its approach by bell or whistle. This, the court has said, was negligence under the circumstances, the coaches being then open for the reception of passengers, and passengers and their friends, passing to and fro, as the evidence tended to show. They were warranted in finding that Tomlinson was killed either on his return from a trip to the coach made by him to assist an embarking passenger, or on his return from a second trip, made to look after the comfort and welfare of the passenger; and this court has said that, if that be true, his entry upon the premises of the railway company was upon its implied invitation, and that he had the right to rely upon an implied assurance that the way was clear. They were warranted in finding, and must have found, in order to reach a verdict under the instructions given them, that

he did not, when he went upon the track, have his head so enveloped in the cape or hood of his coat as to prevent his seeing or hearing the signals from an approaching engine. This court said that under those circumstances it could not be said as a matter of law that he was guilty of contributory negligence, but it became a question for the jury, after considering all the circumstances, to say whether or not he failed to exercise ordinary care.

It is claimed that the verdict is excessive. Tomlinson was, at the time of his death, 29 years old, a vigorous, healthy man, and, according to the mortality table introduced in evidence, had an expectancy of 35 years. He was possessed of a good education, had at the age of 18 become a practical printer, and advanced rapidly in his trade. At the time of his death he was chief of the stationery division in the Department of the Interior at Washington, receiving a salary of $2,000 per annum, and in addition to this he was earning a salary of $180 per annum as professor of military tactics in a college in the City of Washington. It is also shown that he sometimes did night work in the Government department, for which he received extra pay. There was sufficient evidence to base a finding of his gross earning capacity at the time of his death, to say nothing of the probability that a man of his character and ability, as shown by the evidence, would increase his earning capacity in the sum of $2,500 per annum, and the plaintiff testified that he spent a small portion of it on himself, the remainder being contributed to the support of his wife and child. Putting the net earning contributed to plaintiff and the child at one-half of the gross earnings, $1,250, it would require the sum of $18,125 to purchase an annuity, calculating at 6 per cent. interest, for that sum. This leaves out of account the other element of damages, viz., the loss of the physical and moral training by the father to the child. It is shown that he was an affectionate father, and was qualified to bestow, and would probably have bestowed, great care and attention upon the training of his child, who was two years old at the time of his death.

The plaintiff was entitled to interest at the rate of 6 per cent. per annum on the amount of the damages from the date of Tomlinson's death, when the cause of action arose, to date of recovery. Computing interest at that rate on an estimate of damages at

$13,190 from July 8, 1894, the date of Tomlinson's death, up to February 14, 1903, the date of the judgment, would make a total of $20,000 principal and interest.

The evidence warranted the amount assessed by the jury. The judgment is affirmed.

HILL, C. J., not participating.