SAM LORBERBAUM v. KNUT CHRISTOPHER.[1]

November 20, 1936.

No. 30,844.

[1]Reported in 269 N. W. 646.

*Leonard, Street & Deinard,* for appellant.

*Olof L. Bruce,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff as administrator of his wife's estate met with an adverse verdict in his action to recover damages under the wrongful death act. Being unsuccessful on his motion for new trial, he appeals.

The facts are simple and may be summarized as follows: In 1910 defendant built a four-flat building in Minneapolis and has since owned and maintained it. He secured the services of a competent architect and contractor, and the building was erected according to plans and specifications furnished by the architect. The structure is of the simple and ordinary construction of this type of property. Tenants occupied four apartments, two being on the ground floor and two above. The entrance to the building is from the east. There one enters a vestibule seven feet seven inches in width and a little more than five feet deep from the front door. One so entering faces an open stairway leading to the second floor, and immediately to the left thereof is the door leading to the basement. The door leading to the south apartment is to the left of one entering the vestibule, and similarly across the vestibule to the right is the door leading to the north apartment. The stairway leading to the second floor has a landing eight risers above the level of the vestibule. At that point there is a platform, and the remaining risers leading to the second floor are above the basement stairway. This vestibule is well lighted with adequate windows, as is also the basement. Immediately upon opening the basement door one would find a white plastered wall and a sloped ceiling underneath the stairway above. The situation is excellently portrayed in the exhibits used at the trial.

During the morning of October 21, 1933, Mollie Lorberbaum, plaintiff's intestate, was engaged in securing community fund workers for a team of which she was captain. For the purpose of se-

curing one Mrs. Turk to assist in this work, she entered this building and the vestibule to which reference has been made. Mrs. Turk resided in the lower left apartment. Upon entering the vestibule Mrs. Lorberbaum rapped on the door and heard someone answer "come in." Mrs. Turk was the one who extended the invitation. When she heard someone trying to open the door, recalling that it was locked, she immediately got up from where she was sitting and proceeded to open it. She did so and observed that the basement door had been opened and that Mrs. Lorberbaum was lying at the bottom of the basement steps, where she evidently had fallen from the top of the basement stairway. She died a few minutes later.

The day was bright and clear and the vestibule well lighted. Also to be noted is the fact that there were placed in this vestibule four push-buttons and name plates with the names of the four tenants thereon.

Plaintiff was duly appointed administrator of his wife's estate and brought this action to recover damages in his own behalf and that of four children, the issue of their marriage, they being the next of kin. The basis for recovery was succinctly summarized by the court in this form:

"It appears that it was 11 o'clock in the morning and there was good light in the vestibule at the time. It appears also that this vestibule was used in common by the tenants in that building and persons coming to see them. That this basement door was used for the purpose of going into the basement, where there were four heating plants, one for each apartment, and also store rooms for the benefit of the tenants, and that it was used for that purpose.

"Plaintiff's claim is that the defendant was negligent, that he failed to exercise due care in providing a door for ingress and egress to this basement; that there was negligence in failing either to put a sign or label upon the outside of the door indicating it was a basement door and, if this was not done, in failing to have the door open outward into the vestibule instead of opening inward, as it did, or if this was not done, if the door was to open inward, in failing to have a platform at the top of the stairs of about the width

of the door, and also in failing to have a handrailing there on the stairway to the basement. Those, very briefly, are the claims of the plaintiff."

The issues of defendant's negligence and the contributory negligence of plaintiff's intestate were duly submitted to the jury. We find no fault with these instructions. As a matter of fact, counsel for neither side made any suggestion of error in respect thereto when the case was submitted. To be added is the further fact that upon agreement of counsel the jury were sent out to view the premises immediately before the judge gave his instructions. There is no claimed error in respect thereto or thereof.

Several assignments of error have been made and urged in briefs of counsel as well as upon the oral argument. Only one requires discussion. It is this: During the course of the cross-examination of plaintiff his remarriage was brought out. To some extent the bringing out of this fact was aided by counsel for plaintiff. But defendant's counsel further sought and obtained admissions on the part of plaintiff that his newly acquired wife was a splendid housekeeper, an excellent stepmother to his children, and was thoroughly competent. This was brought out over the plaintiff's objections. The court, realizing its error in this regard, instructed the jury to disregard and eliminate from any consideration, if they reached the question of damages, this testimony. The court said:

"There has been some testimony of the fact that the plaintiff has remarried since the death of his first wife and as to the nature of the services performed by the second wife. In that connection the jury are instructed that the subsequent remarriage of the survivor, the plaintiff herein, is not to be considered by you in mitigation of damages sought to be recovered by him, and that if plaintiff is entitled to recover the services performed by a second wife are not to be considered."

The presumption is in favor of the verdict. To set it aside this court must hold that the jury was so impressed by the admitted testimony as to make for naught the instruction. We have no business supposing prejudice. Obviously the basis for liability was

negligence. The question of damages could not be reached until the jury first determined that vital question. Under those circumstances, the trial court having exercised its discretion in denying a new trial, we would be going far afield now in setting aside a well considered and entirely justified exercise of that discretion.

That the jury were incapable of comprehending and duly heeding an instruction as clear as the one quoted seems impossible. In the court's memorandum attached to the order here for review the court said:

"Objection is made to testimony received as to a new marriage of the plaintiff. This was received, in part, without objection. The court fully instructed·the jury not to consider it in assessing damages. No verdict whatever having been returned for plaintiff, the evidence was immaterial, going as it does to the amount of damage."

The rule that should be our guide is well stated in 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7207:

"*A new trial should not ordinarily be granted for the erroneous admission of evidence when the court distinctly instructs the jury to disregard it.* But if it is clear that the prejudicial effect of the evidence could not be thus removed, owing to the exceptional nature of the evidence and the issues, as for example, where the evidence was likely to arouse the sympathies or prejudices of the jury, a new trial should be granted *if it is certain or highly probable that material prejudice in fact resulted.* The question is not to be determined by the application of any hard and fast rules, or by indulging a presumption of prejudice. Each case must necessarily be determined largely by its own facts. *Error in the admission of evidence is almost inevitable in every lawsuit, and when the trial court does all that it can to correct the error, the supreme court is slow to grant a new trial therefor.* Where, during a trial, objectionable evidence is received, but, before final submission, the court perceives the error and instructs the jury to disregard such evidence, the presumption is that no prejudice resulted from its reception, and, if the instruction in that regard is lacking in clear-

ness or definiteness counsel, by failing to call the court's attention thereto, waives the defect." (Italics supplied.)

This case comes clearly within the statutory directions that we should "disregard all crops or defects in the pleadings and proceedings which do not affect the substantial rights of the adverse party." 2 Mason Minn. St. 1927, § 9285; 1 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) §§ 416, 424. See also Gibbon Farmers Elev. Co. v. Herschmann, 160 Minn. 326, 200 N. W. 293; Dean Wigmore's article "Reversible Error," 19 Journal of Am. Judicature Society 28.

What this court said in Chase v. Tingdale Bros. 127 Minn. 401, 403, 149 N. W. 654, 655, seems to fit the present case:

"There is a claim of error in an instruction on the measure of damages, and in permitting a witness to testify as to the cost of repairs to the damaged car. As the jury never reached the question of damages, it is plain that there is nothing to decide here."

We have not overlooked Evans v. C. M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335, 336. That was an action brought by a passenger against a common carrier for personal injuries received while such passenger. The court in that opinion carefully reviewed prior cases, and nothing therein said indicates any intention on the part of the court to depart from the general rule we have heretofore stated, namely, that where the court strikes out improper testimony and directs the jury to disregard it the presumption is that prejudice does not result. In the Evans case, however [133 Minn. 295]:

"The existence of accident insurance was prominently before the jury until after the plaintiff had rested. Its importance was emphasized. The bearing of it upon the ultimate issue was suggested by the court and by counsel. The question of its admissibility was sharply contested before the jury for a considerable time. The defendant considered proof of it of great value to its case. The plaintiff considered proof of it very detrimental to him. The jury saw it all. An attentive consideration of the evidence brings us to the definite conclusion that the plaintiff was so substantially prejudiced

by the testimony, though it was stricken and the jury directed to disregard it, that a new trial should be granted."

Obviously that case is not similar to the one here for decision. The pleadings therein indicate very clearly that the question of nonliability hinged largely, if not entirely, upon plaintiff's alleged contributory negligence.

In the case before us the jury were instructed that if they came to the question of damages that plaintiff was entitled to recover, "aside from funeral and burial expenses," also the general damages suffered by plaintiff and the children, four in number, aged 7 to 22 years. The court said:

"A proper estimate may be arrived at, if you consider this issue of damages, by taking into consideration the occupation of the deceased, her health, strength, physical condition, her age, her probable duration of life, her habits of industry, the extent of services which the deceased was accustomed to furnish her husband and children, and also take into consideration the funeral expenses, as shown by the evidence."

Immediately following what we have now quoted is the quoted portion from the charge which we believe adequately cured the error complained of.

The funeral and other items of burial expense claimed amounted to more than $500. There was a seven-year old child in addition to three older children. It seems impossible that a jury, if it found liability, would have overlooked what must have appeared to be an absolute obligation in the way of funeral expenses and the obvious loss of a mother to this seven-year old boy.

Order affirmed.

DEVANEY, CHIEF JUSTICE (dissenting).

I cannot agree with the majority. In my opinion, the trial court plainly erred in allowing defendant to examine plaintiff with respect to his second marriage and as to the details of the services of the second wife. It is well settled that in an action by the husband for wrongful death of his wife testimony as to second marriage and the services of the second wife is inadmissible and in-

competent for any purpose whatsoever. St. Louis I. M. & S. Ry. Co. v. Cleere, 76 Ark. 377, 88 S. W. 995; Chicago & E. I. R. Co. v. Driscoll, 207 Ill. 9, 69 N. E. 620; Consolidated Stone Co. v. Morgan, 160 Ind. 241, 66 N. E. 696; Archer v. Bowling, 166 Ky. 139, 179 S. W. 15; Davis v. Guarnieri, 45 Ohio St. 470, 15 N. E. 350; Philpott v. Pennsylvania R. Co. 175 Pa. 570, 34 A. 856.

It is urged that the error was without prejudice for two reasons: First, that the testimony went only to the amount of damages and no verdict was returned for plaintiff; and, second, that the court instructed the jury that the subsequent marriage was not to be considered in mitigation of damages to be recovered by plaintiff.

The first is grounded upon the hypothesis that, as the jury found for defendant, it found that there was no basis for imposing liability, and therefore there never was any consideration of the question of damages. It is true that under a proper consideration of the issues in this case the fact of remarriage could have no bearing on the question of defendant's negligence or intestate's contributory negligence, upon which questions hinges defendant's liability. But it seems clear that as a practical matter the admission of such evidence had a likely tendency to prejudice the jury against plaintiff's cause of action to such an extent that it did not consider the elements of the case relating to defendant's liability fairly and impartially. Evidence such as was here produced showing that the husband remarried one year and three months after the death of his first wife, that the second was a good wife, that she was kind to all the children, and that she was a good housekeeper could have had but one effect on the jury, which was that the plaintiff had profited much and lost little by the death of his first wife. It could not have been otherwise than that this evidence influenced the jury's consideration of the issue of defendant's liability.

Granting that the jury properly considered the issue of defendant's liability without regard to this prejudicial testimony, and considered the fact of remarriage only in connection with the question of damages, if at all, my conclusion would not be altered. It may well be that the jury considered the defendant negligent, the plaintiff's intestate free from contributory negligence, and then de-

cided to deny plaintiff damages because of his subsequent success-ful marriage. Would it not reasonably follow that the jury might have concluded that, as plaintiff later had acquired an excellent wife and his children a good and kind mother, no real loss had been suffered and therefore no damage would follow?

There is no sound basis for defendant's claim that the admission of the testimony regarding the subsequent marriage was without prejudice. It is true that in certain cases instruction by the court to disregard erroneous testimony will be sufficient to remove its harmful effect. The presumption is that it is sufficient. But where the erroneous testimony is of a character which would naturally affect the feelings or bias of the jury, it cannot be cured by that method. Evans v. C. M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335. It seems to me that in this case the presumption is con-clusively rebutted by the common-sense view of the character of the evidence. It would require considerable naiveté to believe that the effect of information which would likely appeal to deep-rooted feelings and ideas to the prejudice of a litigant can be completely or even partially erased by a few cautionary words spoken calmly and dispassionately by a trial court.

I have not overlooked the fact that there was no objection made by plaintiff's counsel when the information concerning the existence of the second marriage first appeared in the case. However, stren-uous objection was made to the detailed examination relating to the merits of the second wife, which, considering the information ob-tained and the manner in which the examination was conducted, was highly prejudicial and cannot be said to have been licensed by the fact that it appeared originally that there was such a marriage. Also, the strenuous contest on the question of admissibility was carried on within the hearing of the jury, which obviously would have a tendency to emphasize the testimony.

The order appealed from should be reversed.

LORING, JUSTICE (dissenting).

I agree with the views expressed by Mr. Chief Justice Devaney.