RICHARD ERNST v. UNION CITY MISSION AND OTHERS.[1]

April 9, 1937.

No. 31,152.

Robert J. McDonald and William H. DeParcq, for appellant.

Charles F. Kelly and Gordon J. Mangan, for respondent William H. Watson.

Cobb, Hoke, Benson, Krause & Faegre, Paul J. McGough, and Wright W. Brooks, for respondents Union City Mission and William Haase.

JULIUS J. OLSON, JUSTICE.

Plaintiff was injured at and within the intersection of highways 55 and 100 in rural Hennepin county, the accident taking place about five o'clock in the afternoon on April 9, 1935. He was driving a Ford truck and defendant Haase was driving a bus for defendant Union City Mission. Defendant Watson was its licensed owner.

[1]Reported in 272 N. W. 385.

This action was brought to recover damages for the injuries suffered by plaintiff, both to his person and truck. When plaintiff rested defendants did likewise, doing so provisionally, and moved the court for an order directing a verdict in their behalf. The motion was granted, the court being of opinion that, granting negligence on the part of the driver of the bus, plaintiff's failure to use due care for his own safety appeared as a matter of law and as such precluded recovery on his part. His motion for new trial having been denied, an appeal from that order brings the case before us.

The two highways cross at right angles. Plaintiff was driving his truck in a northerly direction upon highway No. 100. This is graveled, about two rods in width at the top. It is extensively used, being a short-cut between the villages of Hopkins and Osseo. Defendant Haase was driving a large bus in a westerly direction on highway No. 55. This is paved with concrete 18 feet in width, and there are ample shoulders on both sides. The road on which plaintiff was traveling was soft, rough, and generally in bad condition. Hence he was driving slowly, as his truck was loaded with vegetables and fruit carried in baskets or boxes, and because of the roughness of the road he had to travel slowly to keep these from being spilled. When about 50 feet away from the paved road, plaintiff first looked to his left and saw that there was no vehicle approaching from that direction. He then looked to his right and observed the bus approaching some 500 feet distant. His rate of speed at that time was about eight miles per hour. When about 20 feet away from the concrete pavement he again looked and observed the bus approximately 300 feet away. He had entered upon the intersection and had almost crossed it when he was struck immediately back of the cab on his right side with such force and violence that he was thrown out of his driver's seat and landed some 65 or 70 feet beyond the point of collision. His truck was pushed along the highway some 40 feet, was badly smashed, and had come to rest turned over on its side. The bus too tipped over, and considerable damage was done to it. The day was clear, the vision unobscured. The locality at the point of intersection is open so that each driver could, ap-

proaching from the direction he did and if exercising reasonable care, see approaching vehicles a long way off. Neither road was an arterial highway. Both were extensively used by the general public. The paved highway was protected by a stop sign on the north side of this intersection because the view is somewhat obscured to one approaching from that direction. This situation, however, is not true to one approaching from the south. There had never been a stop sign for northbound traffic until some time after this accident.

Several witnesses testified that plaintiff entered the intersection when the bus was 150 to 200 feet east of the same. The bus driver made no effort to slacken his speed and gave no warning signal. One witness testified that when plaintiff's front wheels were just over the center black line of the paved highway the bus was 80 feet from the intersection.

We think enough has been said to indicate the situation confronting these drivers so that, applying well established rules as laid down in our prior cases, determination of the issues presented may be made.

The court, in discussing its reasons for granting defendants' motion, said that the question of defendants' negligence might well be conceded, but even so, in the view of the court, plaintiff failed to exercise reasonable care in entering the intersection without ascertainment of the speed at which the defendants' bus was operated. This language was used: "He didn't look long enough or didn't give enough time or thought to determine whether or not it was going fast or slow." So the question narrows down to this: Was the situation such that plaintiff, acting as a reasonably prudent man under the circumstances, could assume that the oncoming bus was being operated at a rate of speed and under such control that its driver, in the exercise of due care on his part, could and would afford plaintiff the statutory right of way so as to permit him to cross the intersection in safety?

Plaintiff having reached the intersection first and having observed the oncoming bus from his right to be from 150 to 200 feet beyond

it, would not a jury be justified in saying that he had the right to expect that the bus driver would accord him the usual and customary right of one so entering the intersection? We think it clear that this issue was one of fact for the jury. The following cases we think so demonstrate. This court in Guthrie v. Brown, 192 Minn. 434, 435, 256 N. W. 898, 899, said:

"The jury could further find that plaintiff entered the intersection at a time when defendant was at such a distance therefrom that she had no reasonable ground to apprehend that he would collide with her car if he exercised ordinary care. She testified that she was not aware of the speed at which he was going. She did not know that he had failed to look ahead or to see her car. *She had a right to assume that he would see her car then in plain view ahead of him at and in the intersection.*" (Italics supplied.)

In the late case of Pearson v. Norell, 198 Minn. 303, 307, 269 N. W. 643, 645, the court, citing with approval the Guthrie case, said:

"Plaintiff as she entered an intersection observed defendant's car a block away, and it was held that she might reasonably assume that he would diminish his speed and yield the right of way. We think that the same rule should be applied where a driver takes an observation which under the circumstances should disclose an approaching vehicle within the danger zone." And again, 198 Minn. 307, 269 N. W. 646: "It seems to us that reasonable men might conclude that in the situation as it existed he was in the exercise of ordinary care. It is true that he took his observation to the left through his windshield, and had he looked through the isinglass in his curtain he might have seen to a much greater distance; but the jury might well have found that the observation which he did take was sufficient to advise him that no vehicle was apparently within striking distance *if it observed the law.*" (Italics supplied.)

It was the bus driver's duty "to observe the law," and plaintiff had a right to rely on his obedience of it.

Among other cases of similar import are Reynolds v. Goetze, 192 Minn. 37, 255 N. W. 249; Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744; Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; Overly v. Troy Launderers & Cleaners, 196 Minn. 413, 265 N. W. 268; Timmerman v. March, 199 Minn. 376, 271 N. W. 697, 698.

It is not for courts to determine issues of this type. We think the facts in the present case so clearly bring it within the rule laid down in the cited cases as to require no further comment on our part.

Order reversed.