EDWARD HAEG v. SPRAGUE, WARNER & COMPANY, INC. AND ANOTHER.[1]

April 8, 1938.

No. 31,475.

*Snyder, Gale & Richards* and *Paul J. McGough,* for appellant.
*Peter E. Kamuchey,* for respondent.

[1]Reported in 281 N. W. 261.

Holt, Justice.

Plaintiff got the verdict in this automobile collision case. Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The impact occurred in daylight at the right-angle intersection, three miles south of the southern limits of the city of Minneapolis, of county highway No. 52, also known as Nicollet avenue, and rural Hennepin county road, known as Eighty-sixth street south. The former lies north and south; the latter east and west. Plaintiff approached from the west, on Eighty-sixth street, in his ton-and-one-half Chevrolet truck; Harry Thompson, employe of defendant and owner of a Chevrolet sedan, came from the south on highway No. 52. Eighty-sixth street is a rough gravel road from 9 to 14 feet wide. Highway No. 52 has a smooth, bituminous-treated surface. Its "black top" is about 27 feet wide. From shoulder to shoulder its width is 36 to 37 feet. The country is flat. There is a clear view in all directions. There were no distracting circumstances on either road at the time of the collision.

We adopt defendant's argument that plaintiff was guilty of contributory negligence as a matter of law. So we must and do put the evidence in the light most favorable to plaintiff. Plaintiff testified to having seen Thompson's car at least four times at various distances south of the point of collision, and that it was traveling from 50 to 60 miles per hour until the collision. The first time plaintiff was about 200 feet west and going at about 30 miles an hour. Then Thompson was 400 to 500 feet to the south. When plaintiff was 30 feet from the intersection he saw Thompson's car 150 to 175 feet away. At that point plaintiff released his accelerator and let his truck coast at the rate, as he says, of about 20 miles an hour into the intersection.

Plaintiff's testimony is that as he entered the intersection Thompson's automobile was still about 100 to 125 feet south of it and apparently not slackening its speed. He testified that "I entered the intersection first, and I expected him to slack up and let me through." The next view plaintiff had of the oncoming car took place when the former was in the center of the intersection, half-

way across, and the latter about 50 to 60 feet south. It does not appear at what speed Thompson's car was then going. The impact occurred about 13 feet east of the center line of the highway, on its eastern edge. Whether the plaintiff's car struck Thompson's or *vice versa*, the testimony is in conflict both as to the observation of witnesses and the physical facts. As to that it is significant, but not controlling, that without objection of counsel for plaintiff the jury was instructed as follows:

"I think it is undisputed that the Thompson car passed, or was about to pass in front of the Haeg car and that the Haeg car struck the Thompson car on its side near the left front, and that the motor of the Haeg car was driven back some distance toward the cab."

It is not for us to decide which car ran into the other. But, on the evidence, no one may deny that Thompson's car did pass in front of and to the east of plaintiff's car. The latter, by the impact, was turned sharply to its left and came to rest on its side a short distance north of the point of collision on the east shoulder of Nicollet avenue. Thompson's car continued on northeasterly some 40 or 50 feet, right side up off the road.

It is important that, coming as it was from plaintiff's right, Thompson's car had the statutory right of way unless the latter had forfeited such right by reason of excessive speed. The latter, as to both right of way and the forfeiture of it, were given to the jury by the charge. Thompson admits a speed of about 45 miles per hour until the moment when he saw plaintiff was not going to yield him the right of way. Then, so he testified, he applied the brakes until he got the machine down to "half speed" at the time and place of the collision. The jury must have chosen not to believe Mr. Thompson's testimony on that point. But this much is clear—plaintiff never entertained the thought of yielding the right of way, his intention all along being to get across Nicollet avenue ahead of Thompson's car.

Plaintiff's case, all through, stresses reliance upon plaintiff's supposed right to assume that Mr. Thompson would have exercised

ordinary care to avoid a collision. The latter's negligence must be taken as established by the verdict. Plaintiff's supposed reliance upon Mr. Thompson's exercise of due care is of no moment for the simple reason that this is a case, if ever there can be one, where such reliance was itself negligence. We stress again the obvious truth of fact and law that it is not due care to depend upon the exercise of care by another when such dependence is itself accompanied by obvious danger. Heath v. Wolesky, 181 Minn. 492, 233 N. W. 239; Dragotis v. Kennedy, 190 Minn. 128, 250 N. W. 804. Without binding plaintiff by his own testimonial estimate of speed, or by that of any other witness, we are not yet able to ignore this alternative. Either Thompson's car had the right of way or it was being driven in excess of 45 miles per hour. So when plaintiff entered Nicollet avenue, Thompson's car was so close and going at such rate of speed that it was the clearest kind of negligence for plaintiff not to stop. If Thompson was driving at 50 miles per hour, he was traveling 73½ feet a second. He could not have stopped his car within 125 feet with instantaneous application of the brakes. And that stopping distance would be increased in proportion to the so-called reaction time needed by Mr. Thompson to apply the brakes after discovering the emergency. We do not hold plaintiff chargeable as with knowledge of such exact figures, or with consciousness, at the moment, of their import. But it is clear that the circumstances were such as to make a collision inescapable if he persisted, as he did, in his attempt to cross Nicollet avenue ahead of Thompson.

To attempt a review of the cases and a grouping of them on their respective sides of the line which lies between conduct which is and that which is not contributory negligence as a matter of law would be futile. This case presents these outstanding circumstances of its own. Plaintiff had a clear view of the approach of Thompson's car over a long distance; knew all the time that it was coming with great speed and did not observe any checking of its momentum. (The fact that the collision occurred as it did shows that when he entered Nicollet avenue Thompson's car was much closer than plaintiff admits.) This is not such a case as Duffey v.

Curtis, 193 Minn. 358, 258 N. W. 744, where plaintiff got onto the intersection first under such circumstances as to give him the right of way. Plaintiff in the case at bar had no reason to assume that the other driver would exercise reasonable care, because it was perfectly obvious either that the other was not doing so, or, if he did, that the danger of collision was still great. One of our most recent cases, and possibly the closest in its facts, is Ernst v. Union City Mission, 199 Minn. 489, 272 N. W. 385. The facts there were different in a determinative way because when Ernst reached the intersection the oncoming bus of the defendant was still 150 feet to 200 feet away, and that and other circumstances justified the jury in saying that Ernst had the right to expect that the bus driver would accord him the right of way. That was an issue which we held was for the jury. Similar to that situation were the drivers in Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898; Pearson v. Norell, 198 Minn. 303, 269 N. W. 643. It cannot be so held here because the circumstances are so different. When this plaintiff entered the intersection Thompson's car must have been so close that the hazard of collision would be great, if not inescapable, unless plaintiff stopped. The rule that one may rely upon the exercise of due care by another does not justify the former in putting himself in a place which would be exceedingly dangerous in any event. That is precisely what this plaintiff did, inadvertently of course. The evidence is open to no other conclusion. He took a highly hazardous chance in beating Thompson's car across the intersection. No rule of law justifies him in so doing so as to excuse him from the consequences of his own negligence. The case is controlled by such cases as Mozes v. Borlaug, 190 Minn. 568, 252 N. W. 420; Faber v. Herdliska, 194 Minn. 321, 260 N. W. 500.

No one can appreciate more than we the hardship of depriving plaintiff of his verdict and of all right to collect damages from defendant; but the rule of contributory negligence, through no fault of ours, remains in our law and gives us no alternative other than to hold that defendant is entitled to judgment notwithstanding the verdict. It would be hard to imagine a case more illustrative of the truth that in operation the rule of comparative negli-

gence would serve justice more faithfully than that of contributory negligence. We but blind our eyes to obvious reality to the extent that we ignore the fact that in many cases juries apply it in spite of us. But as long as the legislature refuses to substitute the rule of comparative for that of contributory negligence we have no option but to enforce the law in a proper case. We cannot escape the conclusion that this case compels its application.

The order must be reversed with directions to enter judgment for defendant notwithstanding the verdict.

So ordered.

PETERSON, JUSTICE (dissenting).

The feature of this case relied upon to distinguish it from Duffey v. Curtis, 193 Minn. 358, 258 N. W. 744, Ernst v. Union City Mission, 199 Minn. 489, 272 N. W. 385, and similar cases permitting plaintiff's recovery to stand, is the conclusion that when plaintiff entered the intersection "the circumstances were such as to make a collision inescapable if he persisted, as he did, in his attempt to cross Nicollet avenue ahead of Thompson." But this conclusion is not required when the evidence is viewed in a light favorable to plaintiff. The evidence presented a question for the jury as to whether or not the circumstances suggested a danger which would prompt a reasonable man to act otherwise than plaintiff did.

When plaintiff entered the intersection defendant was about 125 feet away. Plaintiff was then 37 feet from the east side of the intersection, for Nicollet avenue there is 37 feet from shoulder to shoulder. The "black top" surface on which Thompson was approaching is 27 feet wide. To reach the other side of the intersection and be clear of the "black top" surface, plaintiff had to travel the width of the westerly shoulder of Nicollet and the "black top" surface, a distance of about 32 feet. Thompson, 125 feet away, was driving at around 45 to 50 miles an hour. His speed was something more than twice that of plaintiff's, but he had to travel four times the distance that plaintiff would travel before he would intercept plaintiff's crossing. Thompson is said to have been traveling 73½ feet a second; plaintiff was traveling 29 1/3 feet a sec-

ond. Figured closely, plaintiff would travel his 32 feet before Thompson could travel the 125 feet. The respective speeds and positions of the cars at that time indicated that plaintiff would cross safely if each continued at his then speed. Certainly, if Thompson slackened his speed, or if he slackened his speed and turned to the left, or if he came to a stop, plaintiff would encounter no danger. The possibility of danger depended upon what Thompson would do during the 125 feet that separated him from the intersection, and, more specifically, depended upon whether Thompson would decrease or increase his speed. Plaintiff, present at the intersection, had a right to assume that Thompson would exercise ordinary care, which in this case meant that Thompson would slacken his speed and allow for plaintiff's presence at the intersection. Primock v. Goldenberg, 161 Minn. 160, 200 N. W. 920, 37 A. L. R. 484. Plaintiff's reliance upon that assumption did not necessarily become negligence *unless and until he became aware* that Thompson could not or would not slacken his speed. Primock v. Goldenberg, *supra;* Guthrie v. Brown, 192 Minn. 434, 256 N. W. 898; Duffey v. Curtis, *supra;* Montague v. Loose-Wiles Biscuit Co. 194 Minn. 546, 261 N. W. 188; Ernst v. Union City Mission, *supra;* Nye v. Bach, 196 Minn. 330, 265 N. W. 300. The majority opinion reasons that the presence of Thompson's car 125 feet away, approaching at 45 to 50 miles an hour, charged plaintiff with knowledge that Thompson could not or would not slacken his speed or otherwise make allowances for plaintiff's presence. In support of this it is said that it was physically impossible for Thompson to stop his car within 125 feet. But plaintiff's caution or lack of it in proceeding did not necessarily depend upon whether or not Thompson could bring his car to a complete stop in the distance that separated them. Plaintiff would be sufficiently protected if Thompson slackened his speed, and any appreciable effort to that end would allow plaintiff ample time and room to cross the 27 feet of "black top" surface in safety. It will not be said that Thompson could not lessen his speed in 125 feet. Thompson testified that he applied his brakes when he saw plaintiff in the intersection and reduced his speed from 45 to 22½ miles an hour, *in 50 feet.* If Thompson *could* slacken his speed

in the distance he had to travel, plaintiff had good reason to assume that he *would,* for it was Thompson's duty to do that, notwithstanding his position to the right of plaintiff as the cars approached the intersection. Primock v. Goldenberg, *supra.* In that case the plaintiff, coming from the left, entered the intersection when the defendant was 125 feet to the right and approaching at what seemed to the plaintiff a "very fast" rate of speed. We held that a finding that plaintiff was not guilty of contributory negligence as a matter of law was justified because [160 Minn. 163]: "Drivers approaching from the right are not absolved by the statute from due care * * * Particularly are they obliged, if traveling at a high rate of speed, so to reduce it as to protect others, no matter where they are on the intersection. * * * It was defendant's duty to 'slow down.' He did not do so. Plaintiff had a right to assume that he would." In Nye v. Bach, 196 Minn. 330, 265 N. W. 300, the plaintiff approached an intersection from defendant's left and entered when the defendant's car was 40 to 50 feet to the right, coming at 40 to 45 miles an hour. The plaintiff there faced a nearer source of danger than plaintiff at bar, and the speed of the car approaching from the right was only slightly less than Thompson's speed. We held in the Nye case that the jury could find that plaintiff acted reasonably in assuming that the approaching driver would slacken his speed in the remaining 45 feet and allow the plaintiff to cross. We said [196 Minn. 331]:

"Defendant argues that plaintiff should not have driven directly in the path of the danger that must have been apparent to him. It cannot be said as a matter of law that any danger was apparent. Plaintiff was in the intersection first, was on his own side of the highway, and clearly had the right of way. He was justified in assuming that defendant would respect that right."

Mozes v. Borlaug, 190 Minn. 568, 252 N. W. 420, cited by the majority opinion as furnishing the rule applicable to the instant case, was correctly distinguished in Nye v. Bach on the ground that in Mozes v. Borlaug the defendant's car approached with its right front wheel extended over the curb and otherwise obviously out of

control. There is no evidence in this case that Thompson's car was out of control. The testimony establishes quite the contrary.

The record presents no reason for depriving plaintiff of the rule of Guthrie v. Brown; Duffey v. Curtis; Montague v. Loose-Wiles Biscuit Co.; Ernst v. Union City Mission; Nye v. Bach; and Primock v. Goldenberg, *supra*, that whether or not plaintiff was negligent in assuming that Thompson would reduce his speed was a question for the jury. In my judgment, there should be an affirmance in this case.

HILTON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.

MR. CHIEF JUSTICE GALLAGHER took no part in the consideration or decision of this case.