Julie Bess OLTMANS, a minor, by John William Oltmans, her father and natural guardian, et al., Appellants,

v.

**ORTHOPAEDIC AND FRACTURE CLINIC, P.A., etc., et al.,** Respondents.

No. 48362.

Supreme Court of Minnesota.

April 13, 1979.

Meier, Kennedy & Quinn, Gordon W. Shumaker, Thomas F. Burns, deceased, and Andrew J. Eisenzimmer, St. Paul, for appellants.

Gislason, Dosland, Malecki, Gislason & Halvorson, S. P. Gislason and C. Allen Dosland, New Ulm, for respondents.

Heard before SHERAN, C. J., ROGOSHESKE, and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

This is a medical malpractice action by plaintiffs Julie Bess Oltmans, a minor, and her father, John Oltmans, against defendants Orthopaedic and Fracture Clinic, P.A., and Dr. Donald C. Meredith for negligent failure to diagnose and treat an infection. Plaintiffs appeal from an order of the district court denying their motion for judgment notwithstanding the special jury verdict or for a new trial. Two issues are presented: (1) Were plaintiffs materially prejudiced by the admission of certain testimony despite the trial court's ordering it stricken and instructing the jury to disregard it, and (2) was the issue of superseding cause improperly submitted to the jury? We affirm the trial court's decision and hold that the court's rulings on the admission of testimony and corrective instructions to the jury were not prejudicial and the submission of the issue of superseding cause was justified by evidence reasonably supporting its existence.

On April 7, 1969, 8-year-old plaintiff Julie fell while walking in the family farmyard and seriously cut her knee. She was seen in Mankato by Dr. Meredith, an orthopedic surgeon associated with Orthopaedic and Fracture Clinic, P.A. He extensively cleaned the contaminated wound and surgically repaired the damage to the knee structures. Subsequent to surgery Julie experienced pain and exhibited various physiological abnormalities. On April 17, 1969, Dr. Gislason, Dr. Meredith's associate, observed that the wound was infected and performed surgery. Various antibiotics were prescribed, and on April 26, 1969, Julie was discharged from the hospital. Dr. Meredith noticed no signs of infection from May 7, 1969, to September 4, 1969.

On September 11, 1969, Julie was seen at Gillette Hospital on Dr. Meredith's recommendation. Surgery was performed there on October 2, 1969, in an effort to increase the mobility of the knee. On October 20, 1969, a staphylococcus infection appeared in Julie's knee, and subsequent X-rays showed osteomyelitis. Despite further surgeries and treatment at Gillette Hospital, Julie's left knee remains stiff and her injured leg is shorter than her healthy one.

At trial, plaintiffs attempted to prove that during the period April 7, 1969, to April 17, 1969, Dr. Meredith negligently failed to discover the infection by not culturing the wound and negligently failed to treat it properly by not administering appropriate drugs. They further sought to establish that the infection treated by Dr. Meredith recurred at Gillette Hospital,

eventually causing permanent damage to the knee. The parties introduced extensive expert medical testimony on these issues.

On direct examination, Dr. Meredith stated that he based his opinion that he had complied with the standards of good orthopedic practice on his review of hospital charts of specific cases involving similar injuries. Plaintiffs' counsel repeatedly objected and, when the objections were overruled, expressed the wish to examine the records. While counsel and the court were discussing the matter, Dr. Meredith indicated that some of the records he had reviewed were of cases treated by himself or his associates, while others were of cases handled by other physicians. When it appeared from plaintiffs' counsel's examination of the records that Dr. Meredith's testimony was in part hearsay, and that it would raise collateral issues, defendants' counsel moved to withdraw the evidence. Plaintiffs' counsel did not oppose the motion or insist on cross-examination. The trial judge granted the motion, ordered the testimony stricken, and instructed the jury to disregard it. Both counsel declined an invitation to add to the corrective instruction.

Plaintiffs' first contention on appeal is that the admission of Dr. Meredith's testimony concerning specific similar cases was erroneous and that striking the testimony and instructing the jury to disregard it did not remove its prejudicial effect. Assuming that the evidence was inadmissible, we find no merit to the argument. Ordinarily, any error which may occur by reason of the erroneous admission of evidence is cured when the evidence is stricken from the record and the jury is plainly instructed to disregard it. If, however, it is highly probable that material prejudice resulted owing to the exceptional nature of the evidence, a new trial will be granted. Each case must be determined by its particular facts. *Lorberbaum v. Christopher,* 198 Minn. 289, 269 N.W. 646 (1936); *State v. Watzek,* 158 Minn. 351, 197 N.W. 669 (1924); 14A Dunnell, Dig. (3 ed.) § 7207.

After ordering the challenged testimony stricken, the trial judge instructed the jury as follows:

"You will recall Dr. Meredith mentioned that he had the hospital survey a number of cases that might be similar that had happened up at the hospital between '59 and '69, the ten years, roughly, preceding this case, and that from that group he had selected, I think, eight or nine that seemed to be very similar. To avoid problems and to save time, that testimony will now be stricken insofar as it goes into specifics of those cases. Of course, part of what Dr. Meredith remembers are—that part of those cases, not all of them, were his but those cases that were his he remembers, but insofar as the testimony purports to rely on specific details on all of those files, it's stricken and you will disregard it. * * * "

Plaintiffs argue that the instruction was defective in that the description of the testimony fixed it in the jurors' minds, the jurors were not instructed to disregard the conclusions that could be drawn from the evidence, and the cases that Dr. Meredith remembered were not withdrawn from the jury's consideration. We conclude that the summary of the testimony did not exceed that reasonably necessary to identify it for the jury. We also conclude that the instruction sufficiently admonished the jury to disregard Dr. Meredith's opinion on the standard of care insofar as it was based on the specific details of all the cases. Since Dr. Meredith was competent to give such an opinion, based on his experience and training, a more extensive instruction might have constituted error. We read the particular references to Dr. Meredith's own cases as an effort by the trial court to make clear that the jurors were to disregard the specifics of all the cases, including those Dr. Meredith remembered. Although the statement was not as clear as it could have been, we believe that the intended meaning was conveyed to the jury. We are also mindful that failure to insist on a more definite instruction, when counsel considers the one given inadequate to withdraw objectionable

testimony, waives any subsequently claimed defect. *Town of Wells v. Sullivan,* 125 Minn. 353, 147 N.W. 244 (1914).

 Plaintiffs advance two propositions in support of their claim that material prejudice resulted, despite the efforts of the trial judge to remedy any claimed error. First, they assert that Dr. Meredith's was the most persuasive opinion given on the standard of care, since he referred to specific cases, while the other experts merely hypothesized what a reasonably prudent physician would do in like circumstances. Dr. Meredith's testimony in no way appealed to the sympathies or prejudices of the jury. The jurors were well aware of his role in the trial and were instructed to consider any witness' interest in the outcome of the case in evaluating the weight to be accorded his testimony. A review of the record indicates that the extensive medical testimony offered by both parties fully apprised the jurors of the nature of the dispute, and we are not persuaded that the jurors were so influenced by Dr. Meredith's testimony that plaintiffs were denied a fair trial. Second, plaintiffs argue that the jury was compelled to find in Dr. Meredith's favor, since his opinion was given in precisely the language of the trial court's charge. The record indicates that the statement relied on was made out of the jury's hearing. We hold that the testimony was not materially prejudicial, that the trial judge properly ordered it stricken, and that the instruction to the jury to disregard it cured any error that might have resulted from its admission.

Plaintiffs' second ground for appeal is that the trial judge improperly submitted the issue of superseding cause to the jury. It is prejudicial error for the trial court to submit an issue to the jury when there is no evidence reasonably tending to prove its existence. *Hall v. Gillis,* 188 Minn. 20, 246 N.W. 466 (1933). A cause is superseding if: (1) the harmful effects of the cause occurred after the original negligence; (2) the cause was not brought about by the original negligence; (3) the cause actively worked to bring about a result which would not otherwise have followed from the original negligence; and (4) the cause was not reasonably foreseeable by the original wrongdoer. *Kroeger v. Lee,* 270 Minn. 75, 132 N.W.2d 727 (1965). The record contains evidence reasonably supporting a jury finding as to each of these elements with respect to the infection occurring after surgery at Gillette Hospital. We hold that the jury was justifiably instructed on superseding cause.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.